UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CHARLIE RESOSO, | Case No. 2:14-cv-00102-RFB GWF |
| Plaintiff, | **<u>ORDER</u>** |
| v. | Motions for Summary Judgment |
| CLAUSING INDUSTRIAL, INC., ANILOX ROLL COMPANY, INC. d/b/a ARC INTERNATIONAL, INCLUSIVE, | |
| Defendants. | |
| CLAUSING INDUSTRIAL, INC. | |
| Cross-Claimant, | |
| v. | |
| ANILOX ROLL COMPANY, INC. | |
| Cross-Defendant. | |

## I. INTRODUCTION

Before the Court is Defendant Clausing Industrial's Motion for Summary Judgment (ECF No. 184) and Defendant Anilox Roll Company, Inc.'s Motions for Summary Judgment (ECF Nos. 147, 178). For the reasons discussed below, ECF No. 184 is denied, ECF No. 147 is denied, and ECF No. 178 is granted.

## II. PROCEDURAL BACKGROUND

This case arises out of an accident that occurred on January 10, 2012, which rendered the Plaintiff quadriplegic. Plaintiff filed a Complaint in state court on November 14, 2013. ECF No. 1. The original Complaint named Defendant Clausing, Does 1 through 20, and Roe Corporations 1 through 20. Id. Defendant Clausing removed the case to federal court on January 21, 2014. Id. Discovery commenced on March 7, 2014. ECF No. 17. Plaintiff's original counsel withdrew effective September 26, 2014. ECF No. 30. On July 8, 2016, Plaintiff filed a Motion to Amend to add Anilox Roll Company West, Inc. ("ARC West") as a Defendant. ECF No. 64. That motion indicated that the Plaintiff believed ARC West was not his employer and therefore the exclusive remedy provisions of Nevada's worker's compensation statutes did not apply to it. Id. The Court granted the Motion to Amend and Plaintiff filed a First Amended Complaint on July 14, 2016. ECF No. 67. On August 16, 2016, Defendant ARC West filed a Motion to Dismiss the First Amended Complaint. ECF No. 79. On January 26, 2017, Plaintiff filed a Second Motion to Amend to add Anilox Roll Company, Inc. ("ARC, Inc.") as a Defendant. ECF No. 96. That motion indicated that the Plaintiff believed the identity of his actual employer was now a question of fact for the jury to determine. Id. Magistrate Judge Foley granted the Second Motion to Amend on February 28, 2017. ECF No. 104. The Second Amended Complaint was filed on March 20, 2017. ECF No. 106.

This Court held a hearing on ARC West's Motion to Dismiss (ECF No. 79) on March 22, 2017, in which it denied the motion without prejudice and allowed the Defendant leave to file a Motion for Summary Judgment on the issue of whether the Second Amended Complaint relates back to the original Complaint. ECF No. 107. Defendant Clausing Industrial filed a crossclaim against Defendant ARC, Inc. on March 31, 2017. ECF No. 108. The Court granted a Stipulation

of Dismissal with Prejudice as to Defendant ARC West on July 1, 2017. ECF No. 128. Defendant ARC, Inc. filed Motions for Summary Judgment on September 28, 2017 and April 12, 2018. ECF Nos. 147, 178. Defendant Clausing Industrial filed a Motion for Summary Judgment on April 13, 2018. ECF No. 184.

### III. LEGAL STANDARD

#### A. Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

### IV. UNDISPUTED FACTS

Based on the record, the Court finds that the following facts to be undisputed.

#### A. Undisputed Facts Relevant to ECF Nos. 147 and 178

Plaintiff was injured in an accident on January 10, 2012. Plaintiff's COBRA Qualifying Event Document, dated September 28, 2012, lists Anilox Roll Company, Inc. as Plaintiff's

employer. The OSHA Form 300 Log of Work-Related Injuries and Illnesses for 2012, which includes the Plaintiff's accident, lists Anilox Roll Company, Inc. as the employer for the North Las Vegas site. Plaintiff's Blue Cross Blue Shield Employee Benefits Report for 2013 lists Anilox Roll Company, Inc. as Plaintiff's employer.

Both ARC, Inc. and ARC West use the name "ARC International" on their uniforms, letterhead, and email domain names. The Plaintiff's new hire paperwork listed his employer as ARC International multiple times.

Plaintiff filed the Complaint in state court on November 14, 2013. It named Defendant Clausing Industrial, Does 1 through 20, and Roe Corporations 1 through 20. The two-year statute of limitations for personal injuries expired on January 10, 2014. Defendant Clausing Industrial removed to federal court on January 21, 2014.

On January 31, 2014, counsel for Sentinel Insurance sent counsel for all parties a letter via certified mail notifying them of a worker's compensation lien against the Plaintiff in the amount of $779,396.51 and indicating that the Plaintiff was employed by Anilox Roll Company, Inc.

Plaintiff's original counsel withdrew on September 19, 2014, which became effective at 5pm on September 26, 2014.

On January 26, 2014, Plaintiff took the 30(b)(6) deposition of Robert Perfetto, the Vice President of both ARC Inc. and ARC West. In his deposition, Perfetto indicated that ARC, Inc. and ARC West are two separate legal entities, that Plaintiff was employed by ARC West, that Travis Vanover was employed by ARC Inc., and that ARC West purchased the subject lathe.

On March 24, 2015, Plaintiff was deposed. In his deposition he gave the following testimony:

> Q: Did anybody perform any kind of repairs on the lathe on the day of the accident before your accident? Anybody service or do any repair to the lathe before your accident on the day of the accident?

- 4 -

A: That one, I remember that one, always, I remember the one, Luis Rodriguez.
Q: Yes. Did he work on the machine on the day of the accident?
A: No.
Q: Had you seen him work on it before?
A: Yeah.
Q: What did he do to the machine before that you saw?
A: He worked on the machine, but I don't know, because Luis Rodriguez is the one who was working the machinery, and there is Travis, that one maintenance in North Carolina.
Q: Travis?
A: Travis.
Q: Is that Travis Vanover?
A: The one maintenance in North Carolina. If something with the machine, and they call Travis to bring in the Las Vegas.
Q: That was the maintenance man from North Carolina?
A: Yes.
Q: Travis?
A: Yes.
Q: Who would come from North Carolina to work on the machine?
A: He would call Travis to work, yeah, to bring to the Las Vegas.
Q: Prior to the date of your accident, have you seen Travis ever work on this Clausing machine?
A: No.

Plaintiff attempted to take the deposition of Michael Foran, the CEO and owner of both ARC, Inc. and ARC West, beginning in December 2014, but counsel for ARC Inc. refused to make him available, citing the apex deposition doctrine. Between January 2015 and May 2016, counsel for the parties deposed nine lower-level employees of ARC, Inc. and ARC West. On May 11, 2016, Micheal Foran was served a subpoena for a May 30, 2016 deposition, but he could not attend the deposition due to health problems.

On July 8, 2016, Plaintiff filed a Motion to Amend to add ARC West as a Defendant. The motion indicated that Plaintiff believed he was employed by ARC, Inc. and therefore ARC West could be added as a defendant. The Court granted this motion.

Michael Foran was deposed on December 20, 2016. He indicated that he owns both ARC,

Inc. and ARC West and that he represents both companies to the public as ARC International. He testified that the Plaintiff was employed by ARC West. He also testified that to his understanding, the only person who performed repairs on the subject lathe was Travis Vanover, an employee of ARC Inc.

On January 26, 2017, Plaintiff filed a Second Motion to Amend to add ARC, Inc. as a Defendant. Magistrate Judge Foley granted the motion. On July 1, 2017, the parties stipulated to dismiss ARC West with prejudice.

### B. Undisputed Facts Relevant to ECF No. 184

Plaintiff was injured in an accident at his place of employment on January 10, 2012, causing him great bodily injury, including rendering him quadriplegic. Plaintiff was employed by ARC West at the time of his accident. Plaintiff was not employed by Defendant ARC, Inc. at the time of his accident. Plaintiff was injured while operating a lathe originally manufactured by Defendant Clausing Industrial. The subject lathe was purchased by ARC, Inc. in 1996 through Dominion Air & Machinery. The subject lathe was not designed or manufactured with an emergency foot brake. The subject lathe was not in the same condition at the time of the accident as it was when it was purchased and not all of its safety features were functioning at the time of the accident.

## V. DISCUSSION

### A. ECF No. 184

Defendant Clausing Industrial has filed a Motion for Summary Judgment, arguing that Plaintiff cannot prevail on his strict product liability, breach of warranty, or negligence claims.

#### *1. Strict Product Liability*
##### *i. Legal Standard*

Under Nevada law, a manufacturer of a product may be held strictly liable, without a showing of negligence or privity, if a plaintiff proves that (1) a product the defendant manufactured was defective, (2) the defect existed at the time the product left the manufacturer, and (3) the defect caused the plaintiff's injury. Ford Motor Co. v. Trejo, 402 P.3d 649, 653 (Nev. 2017) (citing Shoshone Coca-Cola Bottling Co. v. Dolinski, 420 P.2d 855, 857 (Nev. 1966)). The Nevada Supreme Court has adopted the consumer-expectation test for determining whether a product is defective. Under this test, "those products are defective which are dangerous because they fail to perform in the manner reasonably to be expected in light of their nature and intended function… Further, defective products are more dangerous than would be contemplated by the ordinary user having the ordinary knowledge available in the community." Id. (quoting Ginnis v. Mapes Hotel Corp., 470 P.2d 135, 138 (Nev. 1970)). The Nevada Supreme Court has recognized three categories of strict liability tort claims: manufacturing defects, design defects, and the failure to warn. Id. At this point, this case only includes issues related to design defects and the failure to warn.

In proving that a product was defectively designed, a plaintiff can introduce evidence that "a safer alternative design was feasible at the time of manufacture." Fyssakis v. Knight Equip. Corp., 826 P.2d 570, 572 (Nev. 1992). "In addition to evidence of alternative designs, evidence of other accidents involving analogous products, post-manufacture design changes, and post-manufacture industry standards will support a strict product liability claim." Trejo, 402 P.3d at 654. The Nevada Supreme Court has recognized that "[g]enerally, a substantial alteration [to a product] will shield a manufacturer from liability for injury that results from that alteration." Robinson v. G.G.C., Inc., 808 P.2d 522, 525 (Nev. 1991). "However, if the alteration was insubstantial, foreseeable, or did not actually cause the injury, then the manufacturer of a defective product remains liable." Id. In Robinson, the plaintiff was injured while operating a machine called a crusher or baler, which was designed and manufactured with a safety screen that was supposed to halt the crushing process if anything fell into its path. Id. at 523. However, on top of the machine was a limit switch that controlled the safety screen and could be turned off so that the baler would still function without the safety screen attached. Id. The Nevada Supreme Court noted that the

safety screen was easily detachable and that the machine could still be made to function without it. Therefore, although it was undisputed that the employer had removed the safety screen at the time of the accident, they held that there was a question of fact regarding whether this constituted a substantial alteration to the product, and whether the machine should have been designed with a limit switch to begin with. Id. at 525.

Under Nevada law, a product may also be found defective for purposes of strict product liability if it does not adequately communicate the dangers that may result from its use or foreseeable misuse. Fyssakis v. Knight Equipment Corp., 826 P.2d 570, 571-72 (Nev. 1992). The Nevada Supreme Court has articulated the duty as follows:

> Where the defendant has reason to anticipate that danger may result from a particular use of his product, and he fails to warn adequately of such a danger, the product sold without a warning is in a defective condition. Strict liability may be imposed even where the product is faultlessly made, if it was unreasonably dangerous to place the product in the hands of the consumer without adequate warnings concerning its safe and proper use.

Oak Grove Investors v. Bell & Gossett Co., 668 P.2d 1075, 1080 (Nev. 1983). "[T]he burden of proving causation can be satisfied in failure-to-warn cases by demonstrating that a different warning would have altered the way the plaintiff used the product or would have prompted plaintiff to take precautions to avoid the injury." Rivera v. Philip Morris, 209 P.3d 271, 275 (Nev. 2009) (internal citation and quotation omitted).

### ii. Discussion

First, the Court agrees with Defendant Clausing Industrial that as no manufacturing defect theory has been pursued by the Plaintiff in this case, the strict product liability claim shall proceed on design defect and failure to warn theories only. As to the design defect theory, Plaintiff's experts testified that the subject lathe could have feasibly been designed more safely with an emergency foot brake. The Plaintiff has also pointed out that several of ARC, Inc.'s lathes did have emergency footbrakes, but the lathe that caused the injury did not. This is sufficient to raise a question of fact regarding whether a safer alternative design was feasible at the time of manufacture. Fyssakis, 826

P.2d at 572. It is not the Court's role to choose between expert opinions at the summary judgment stage. Moreover, Defendant Clausing Industrial's argument that according to their expert, "a foot pedal could not have been designed into the machine without significant redesign" does not conclusively establish that a safer alternative design was not feasible, even if the Court accepted it as true. ECF No. 184 at 9. Therefore, the Court finds that there is a question of fact regarding whether the subject lathe was defectively designed.

Further, the Court notes that comparative negligence is not a defense to strict liability in Nevada. See NRS 41.141(5)(a); see also, Maduike v. Agency Rent-A-Car, 953 P.2d 24, 27 (Nev. 1998). Although it is undisputed that the subject lathe was not in the same condition at the time of the accident as when it was purchased, it is a question of fact for the jury to decide whether the machine was substantially altered, such that the manufacturer can no longer be held liable for injuries resulting from those alterations. Robinson, 808 P.2d at 525. As noted by the court in Robinson, this can be the case even where an employer knowingly disables a safety feature and causes a machine to function without that feature. Therefore, the strict product liability claim will proceed, despite the disputed evidence that the Plaintiff and/or his employer may have acted negligently in this case.

The Plaintiff has also raised a question of fact as to whether a more adequate warning might have altered the way he operated the subject lathe. Defendant Clausing Industrial argues that the lathe came with an operator's manual that provided sufficient warnings, including a warning that the machine should not be used if it needed major repairs. Plaintiff argues that more specific warnings were necessary and that there should have been a device to warn that the emergency stops on the machine were not functioning. Plaintiff's expert testified that, although the Plaintiff and his coworker were aware that the emergency stop buttons on the machine were not functioning,

in the stress of the emergency situation they reverted back to their instincts and tried the emergency stop buttons anyway, wasting time and increasing Plaintiff's injuries. Plaintiff's expert testified that had there been a warning device on the machine to indicate that the emergency stop buttons were not functioning, they likely would have tried the functioning stop mechanism sooner. Because the duty to warn includes the duty to warn of foreseeable misuses of a product, Fyssakis, 826 P.2d at 572, the Plaintiff has raised a question of fact regarding whether the Defendant should have provided more specific warnings regarding the potential for safety features on the machine to fail or included a device that would have indicated when safety features were no longer functioning.

### 2. *Negligence*

#### i. *Legal Standard*

In Nevada, "to prevail on a negligence claim, a plaintiff must establish four elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc., 221 P.3d 1276, 1280 (Nev. 2009). The existence of a duty is "a question of law to be determined solely by the courts." Turner v. Mandalay Sports Entertainment, LLC, 180 P.3d 1172, 1177 (Nev. 2008). Breach and proximate cause, however, are generally questions of fact for the jury to decide. Foster v. Costco Wholesale Corp., 291 P.3d 150, 153 (Nev. 2012); Lee v. GNLV Corp., 22 P.3d 209, 212 (Nev. 2001).

#### ii. *Discussion*

Defendant Clausing Industrial argues that the Court should find as a matter of law that it owed no duty to the Plaintiff because the Plaintiff assumed the risk of injury inherent in operating a lathe with non-functioning safety features. Although the Court recognizes that the implied assumption of risk doctrine is a matter of law for the Court to decide, Turner v. Mandalay Sports

Ent't, LLC, 180 P.3d 1172, 1177 (Nev. 2008), the Court does not find that the doctrine is applicable here. As the Nevada Supreme Court has noted, this doctrine has largely been introduced in the sports context and has been extended in limited circumstances to other recreational activities "involving an inherent risk of injury to voluntary participants . . . where the risk cannot be eliminated without altering the fundamental nature of the activity." FCH1, LLC v. Rodriguez, 326 P.3d 440, 443 (Nev. 2014). The Court does not find it appropriate to extend the doctrine beyond the context of sporting events and extreme recreational activities, and even if it did, the Court does not find that the Plaintiff's use of the lathe included such an inherent risk that the doctrine would be applicable in this case. The Defendants may argue at trial that the Plaintiff or the other parties were comparatively negligent, but the negligence claim will not be barred as a matter of law.

### *3. Breach of Warranty*

#### *i. Legal Standard*

Under Nevada law, "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose." NRS 104.2315.

#### *ii. Discussion*

Plaintiff includes in his Second Amended Complaint a claim that the subject lathe was not safe for the purpose for which it was intended. The Court interprets this to be a claim for a violation of the implied warranty of fitness for a particular purpose. The Court finds that there is sufficient dispute as to whether the design and operation of the lathe was fit for its intended purpose that this claim shall proceed to trial.

### B. ECF No. 147

Defendant ARC Inc. filed this Motion for Summary Judgment, arguing that the claims against it in the Second Amended Complaint (ECF No. 106) do not relate back to the original Complaint, which was filed before the statute of limitations period ended.

### *i. Legal Standard*

The Ninth Circuit has held that "Rule 15(c)(1) incorporates the relation back rules of the law of a state when that state's law provides the applicable statute of limitations and is more lenient. As a result, if an amendment relates back under the state law that provides the applicable statute of limitations, that amendment relates back under Rule 15(c)(1) even if the amendment would not otherwise relate back under the federal rules." Butler v. Nat'l Cmty. Renaissance of Cal., 766 F.3d 1191, 1201 (9th Cir. 2014). Under the federal rules, an amendment to a pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). "Rule 15(c)(1)(C)(ii) asks what the prospective defendant knew or should have known during the Rule 4(m) period, not what the plaintiff knew or should have known at the time of filing her original complaint." Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 548 (2010). However, "[w]hen the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met." Id.

Under Nevada law, "[a] party whose name is not known may be designated by any name, and when the true name is discovered, the pleading may be amended accordingly." Nev. R. Civ. P. 10(a). The Nevada Supreme Court has interpreted this rule to require: "(1) pleading fictitious or doe defendants in the caption of the complaint; (2) pleading the basis for naming defendants by other than their true identity, and clearly specifying the connection between the intended defendants and the conduct, activity, or omission upon which the cause of action is based; and (3) exercising reasonable diligence in ascertaining the true identity of the intended defendants and promptly moving to amend the complaint in order to substitute the actual for the fictional." Nurenberger Hercules-Werke GMBH v. Virostek, 822 P.2d 1100, 1106 (Nev. 1991). In assessing reasonable diligence under the third factor, courts should consider the following non-exhaustive list of factors:

> (1) whether the party unreasonably delayed amending the pleadings to reflect the true identity of a defendant once it became known;
> (2) whether the plaintiff utilized judicial mechanisms such as discovery to inquire into a defendant's true identity; and
> (3) whether a defendant concealed its identity or otherwise obstructed the plaintiff's investigation as to its identity.

Sparks v. Alpha Tau Omega Fraternity, Inc., 255 P.3d 238, 243 (Nev. 2011). "What constitutes 'reasonable diligence' under the third element of the Nurenberger test is a question of law." Id. (internal citations omitted).

### ii. Discussion

Under Ninth Circuit precedent, the Court is to apply the relation-back test under federal or state law that is most lenient. Butlerv., 766 F.3d at 1201. It is difficult to say which test is most lenient in this case, but the Court finds that the claims against Defendant ARC, Inc. relate back under either one.

Under the federal test, the claims meet the requirements of Rule 15(c)(1). There is strong evidence that Defendant ARC, Inc. received notice of this action within the Rule 4(m) period such that it will not be prejudiced in defending on the merits. ARC, Inc. and Plaintiff's employer at the time of the accident, ARC West, were owned and run by the same individual. There is evidence

that ARC, Inc. was involved with the management and safety of the ARC West plant. Counsel for Sentinel Insurance sent counsel for all parties a letter just two months after this case was filed, indicating that they represented ARC, Inc., that ARC, Inc. was the Plaintiff's employer, and that there was a $779,396.51 worker's compensation lien against the Plaintiff. This indicates that ARC, Inc. was informed of this action very shortly after it commenced and understood the potential monetary implications. Additionally, ARC, Inc. knew or should have known that this action would have been brought against it, but for a mistake concerning the proper party's identity. ARC, Inc. was aware that itself and ARC West hold themselves out to the public under the same name, ARC International, and it had the most information concerning the confusingly intertwined corporate structure of these entities. ARC, Inc. should have been aware that once the Plaintiff realized that one of these entities was potentially liable for his injuries and was not his employer – and thus not shielded by Nevada's worker's compensation statutes – the Plaintiff would likely bring that entity into the suit.

The Court finds that the Plaintiff has satisfied the Nurenberger test under Nevada law as well. The Plaintiff plead fictitious Roe Corporations in his original Complaint and included a basis for the fictitious names and a connection to their alleged conduct. The original Complaint states that "said DOE and ROE Defendants are the manufacturers, designers, component part manufacturers, installer, owner, distributor, repairer, maintainer, warned for use, retailer and/or warrantor of said defective product as set forth herein."

The Court finds that the Plaintiff exercised reasonable diligence in ascertaining the true identity of the Defendant and promptly moving to amend the Complaint. The Plaintiff could not bring a claim against Defendant ARC, Inc. in good faith until he understood that: 1) ARC, Inc. was not his employer and thus not subject to immunity under Nevada's worker's compensation statutes, and 2) ARC, Inc. may have been liable for his injuries in some manner. The Court finds that the corporate structure of these entities was unclear until considerable discovery had been conducted. Although Robert Perfetto testified that the Plaintiff was employed by ARC West at his deposition in September of 2014, there was considerable conflicting documentary evidence, including the worker's compensation insurance letter sent on behalf of ARC, Inc. in January of

2014. Even if the Plaintiff knew or should have known that ARC West was his employer as of September 2014, he also needed to know that ARC, Inc. may have been involved in causing his injuries in order to bring it into the case. The only testimony that Defendant ARC, Inc. has pointed to that allegedly established liability is the Plaintiff's deposition testimony, which at most establishes that the Plaintiff knew that someone named Travis occasionally came from North Carolina to work on the machines in the Las Vegas plant, but that the Plaintiff had never seen him work on the subject lathe. The Court finds that Plaintiff and Defendant Clausing Industrial diligently pursued discovery from 2014-2016, including conducting document discovery, deposing several lower-level employees of ARC, Inc. and ARC West, and attempting to depose the CEO and owner of both companies, Michael Foran. It was not until this last deposition that it became more clear to an outsider that the Plaintiff had a claim against ARC, Inc., when Foran testified that it was Travis Vanover who likely conducted repairs on the subject lathe. Plaintiff moved to amend within a month of discovering this information. Therefore, the Court finds that these claims relate back to the original Complaint under Nevada law as well. ARC, Inc. will proceed as a party in this case.

### C. ECF No. 178

Defendant ARC, Inc. brought this additional Motion for Summary Judgment, in which it argues that the Court must grant summary judgment in its favor on Claims 2 and 3 for strict product liability and breach of warranty because it is not a seller of lathes. Allison v. Merck & Co., 878 P.2d 948, 951, n.1 (Nev. 1994). The Court agrees with Defendant ARC, Inc. Based on the record, the Court finds that ARC, Inc. is in the business of manufacturing rolls for the flexographic printing industry and at most sporadically supplies its related companies with these machines when needed. The Court does not find that the business relationship and transactions between the two related ARC companies regarding this lathe and perhaps others establishes that Defendant ARC, Inc. was a seller of lathes. Therefore, Claims 2 and 3 will be dismissed against Defendant ARC, Inc.

## VI. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Clausing Industrial's Motion for Summary Judgment (ECF No. 184) is DENIED.

**IT IS FURTHER ORDERED** that Defendant ARC, Inc.'s Motion for Summary Judgment (ECF No. 147) is DENIED.

**IT IS FURTHER ORDERED** that Defendant ARC, Inc.'s Motion for Summary Judgment (ECF No. 178) is GRANTED.

DATED: August 10, 2018.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**